UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GIOVANNA S.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-5758 TSZ

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the ALJ erred by discounting her testimony and erred in weighing three medical opinions. Dkt. 9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Plaintiff is currently 26 years old, has a high school education, and has worked in service and retail. Dkt. 7, Administrative Record (AR) 27, 352. She underwent three back surgeries, in July 2011, April 2012, and October 2013, when she was between the ages of 19 and 21. AR 699. Plaintiff applied for benefits in February 2014, alleging disability as of July 1, 2011. AR 130.

Plaintiff's application was denied initially and on reconsideration. AR 129, 145. After the ALJ conducted hearings in November 2016 and August 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 36, 76, 15-28.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the February 2014 application date.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, asthma, depressive disorder, anxiety disorder, and personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk 6 hours per day each. She can frequently climb stairs and ramps. She can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to hazards. She can understand, remember, and carry out simple instructions and make judgments in unskilled work that can be learned in 30 days with little specific vocational preparation needed. She can respond appropriately to supervision and coworkers, and deal with occasional changes in the work environment. Her work must require no contact with the general public to perform work tasks.

**Step four:** Plaintiff has no past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 17-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.[3]

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

**DISCUSSION**

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.     Plaintiff's Testimony**

Plaintiff testified that, even with medication, she can only sit or stand for a few minutes at a time and can carry less than ten pounds. AR 83-84, 89. She gets migraines weekly that last two days and require her to lie in bed in complete darkness. AR 92-93.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

The ALJ addressed Plaintiff's physical and mental allegations separately, and Plaintiff does not challenge the ALJ's discounting of her mental allegations. *See* Dkt. 9 at 10. The ALJ expressly stated that he discounted Plaintiff's physical symptom testimony because "her physical complaints exceed[ed] the objective medical evidence of record" and were "out of proportion to objective evidence…." AR 21, 22. However, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Social Security Ruling 16-3p provides that an ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 2017 WL 5180304 at *5 (S.S.A. Oct. 25, 2017).

Aware that the ALJ's stated reason is legally insufficient, the Commissioner advances several other reasons. However, the Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sex. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995). A reviewing court may affirm where an ALJ explains her decision "with less than ideal clarity" but her "path may be reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)). However, the Commissioner cannot take a sentence in the ALJ's decision out of context, add facts from the record that the ALJ did not cite or allude to, and claim that it is the ALJ's reasoning.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

**1.      Exaggeration**

The ALJ, in concluding that Plaintiff's complaints were not supported by objective evidence, noted that her spine surgeon, Clyde T. Carpenter, M.D., stated that her "pain complaints were demonstrably out of proportion to her physical findings as well as to the findings on the MRI." AR 552; AR 21. The ALJ did *not* cite Dr. Carpenter's finding that Plaintiff's "Waddell tests are 3/5 positive," which the Commissioner cites and then argues indicates malingering. AR 552; Dkt. 10 at 9 (citing *Satterwaite v. Astrue*, 781 F.Supp.2d 898 (D. Ariz.[4] 2011). In fact, the Ninth Circuit has held that "the Waddell test does not by itself constitute 'affirmative evidence' of malingering... and does not distinguish between malingering and psychological conditions." *Wick v. Barnhart*, 173 F. App'x 597, 598 (9th Cir. 2006). There is no dispute that Plaintiff suffers from psychological as well as physical impairments, and the record contains evidence that her psychological and physical symptoms interact. *See* AR 17 (severe impairments include "depressive disorder, anxiety disorder, and personality disorder"); AR 899 (pain decreased with stress reduction), 617 ("emotional response to pain"). Not only does the Commissioner's argument misstate circuit law, it is an improper *post hoc* argument upon which the Court cannot rely.

**2.      Controlled Symptoms**

As an example of how Plaintiff's physical complaints exceeded the objective medical evidence, the ALJ noted that Plaintiff reported improvement in her symptoms after surgery in

---

[4] The Commissioner's description of this case, which the Commissioner erroneously labels a Ninth Circuit decision, is wholly contradictory to the actual holding. Despite "positive Waddell signs indicating an exaggerated response" the court held that this did *not* indicate malingering, but rather fibromyalgia that was later diagnosed, and held that the ALJ erred by discounting the claimant's symptom testimony. 781 F.Supp.2d at 903.

2013, and improvement in function in 2014. AR 21 (citing AR 688), AR 22 (citing AR 899). The Commissioner claims that this shows the ALJ found that Plaintiff's impairments were well controlled and thus not disabling. Dkt. 10 at 10 (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). This is an unacceptable *post hoc* argument and, even if the ALJ intended to provide well-controlled impairments as a reason to discount Plaintiff's testimony, it was unsupported by substantial evidence. Improvement, without any indication of the degree of symptoms afterward, does not show that the symptoms are well controlled. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n. 23 (9th Cir. 2014) ("'There can be a great difference between a patient who responds to treatment and one who is able to enter the workforce'") (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)). The treatment note did not indicate the symptoms were eliminated or even substantially reduced. The Commissioner's argument fails.

### 3. Work History/Activities

The Commissioner argues that Plaintiff was able to work despite her impairments. Dkt. 10 at 10-11. The ALJ expressly found that Plaintiff had not engaged in substantial gainful activity during the relevant period, and the only mention of any work is that Plaintiff "started working at Desert Sun Tanning" in August 2012, between her second and third back surgeries. AR 17, 21. This was not a reason the ALJ provided for discounting Plaintiff's testimony. And contrary to the Commissioner's characterization that Plaintiff "maintained employment from 2009 through 2012" the record shows that over those four years she had five different jobs, each lasting only one to four months. Dkt. 10 at 11; AR 390. Plaintiff testified that she was fired from one job "for having to sit down and take too many breaks"; another job was too "physically demanding" to maintain; and another job ended when she needed back surgery. AR 42-45. "It

does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments"). An ability to work despite impairments, in addition to being an unacceptable *post hoc* argument, is not supported by substantial evidence.

### 4. Consideration of Obesity

Plaintiff argues that the ALJ erred by failing to properly "consider Plaintiff's obesity when weighing her subjective allegations." Dkt. 9 at 12; AR 17. However, the ALJ cited records that already took obesity into account: Plaintiff's own statements, and medical reports from doctors who were aware of Plaintiff's obesity. *See* AR 21-23. It would not have been appropriate for the ALJ to add his own impression or understanding of how obesity affected Plaintiff. *See Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1009 (E.D. Cal. 2017) ("the ALJ 'must not succumb to the temptation to play doctor and make [his] own independent medical findings.'") (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

### 5. Harmful Error

It was legal error for the ALJ to discount Plaintiff's testimony on the sole ground that it was not fully corroborated by the objective medical evidence. *See Rollins*, 261 F.3d at 857; SSR 16-3p. The error was harmful because the ALJ did not incorporate all limitations that Plaintiff testified to into the RFC and thus the ALJ may have relied in step five on jobs that she cannot perform. *See*, *e.g.*, AR 83-84 (only able to sit or stand for a few minutes at a time). On remand, the ALJ must reevaluate Plaintiff's testimony.

## B. Medical Opinions

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison*, 759 F.3d 995, 1012. An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

### 1. Dr. Hill

In 2012, treating physician K. Burnell Schaetzel-Hill, D.O., filled out a Physical Functional Evaluation, opining that Plaintiff's lumbar degenerative disc disease, radiculopathy, and spinal stenosis caused "[v]ery significant interference" with her abilities to sit, stand, walk, lift, carry, push, pull, reach, stoop, and crouch. AR 548. He opined that Plaintiff was unable to meet even the demands of sedentary work. AR 549. In 2014, Dr. Hill completed another Physical Functional Evaluation, opining between "[v]ery significant interference" and complete "[i]nability" to sit, stand, walk, lift, carry, push, pull, reach, stoop, and crouch. AR 700 (rating of

"4+ to 5" where 4 is defined as "Very significant interference" and 5 is "Inability"). He again opined Plaintiff could not perform even sedentary work. AR 701.[5]

The ALJ gave Dr. Hill's 2012 and 2014 opinions "little weight" because they were inconsistent with contemporary orthopedic treatment notes. AR 24-25. Conflict with the medical record can be a sufficient reason to discount a medical opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions). Here, however, substantial evidence does not support the ALJ's findings that the medical record contradicted Dr. Hill's opinions.

      **a.    2012 Opinions**

In discounting Dr. Hill's 2012 opinions, the ALJ cited physical exams that indicated "consistent[ly] normal gait and mostly full strength." AR 24-25. Plaintiff's surgically implanted hardware showed no nonunion, loosening, or fracture. AR 25. Plaintiff's orthopedic surgeon for her 2012 surgery, Clyde T. Carpenter, M.D., noted that she had "some adjacent segment disease" but "recommended conservative treatment…." AR 25 (citing AR 554-55).

Contrary to the ALJ's findings of normal gait and strength, Plaintiff's gait was often abnormal. Dr. Carpenter's post-operative treatment notes in 2012 showed normal gait. AR 553-57. Dr. Hill's 2012 examinations typically showed normal muscle strength, but gait was frequently abnormal. *Compare* AR 843, 839, 835, 822 *with* AR 825 (limp), 829 (limp, related to

---

[5] In a 2016 treatment note, Dr. Hill wrote that he did not anticipate Plaintiff would be able to return to work "given the static condition of her back over the past 2+ years since her last surgery." AR 1015. Plaintiff does not challenge the ALJ's rejection of this opinion.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

a fall), 818 (limp; had been off opiates), 815 (limp), (gait "slowed and cautious"; foot/toe weakness)). Dr. Hill also observed other abnormalities, such as sensation deficits, inability to toe walk, pain, and tenderness. AR 822, 832, 835, 839, 843. Moreover, the ALJ does not explain how normal gait and strength would contradict any of Dr. Hill's opinions or show that Plaintiff is able to work for eight hours a day. The fact that Plaintiff can walk across an exam room does not mean she can walk for any substantial length of time, and the fact that her muscles are fully functional does not mean that she can lift any meaningful amount of weight repeatedly throughout a work day. Dr. Hill was clearly aware that Plaintiff sometimes displayed normal gait and muscle strength, yet in his professional medical judgment Plaintiff's standing, walking, etc., were markedly impaired and she was not able to work full time. The ALJ provided no reason why his judgment should outweigh Dr. Hill's. *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

The fact that Plaintiff's hardware remained intact also does not contradict Dr. Hill's opinions or show that Plaintiff can work.

Dr. Carpenter noted "some significant stenosis" above the surgical fusion and recommended treating it with physical therapy. AR 552. Dr. Hill was aware of Dr. Carpenter's recommendation. In the November 2012 evaluation, he specifically wrote "further surgery [should] be avoided unless no further conservative t[reatment] options available." AR 549. In fact, Plaintiff underwent a third surgery in October 2013, indicating that any conservative treatment had proved inadequate. AR 739. The ALJ failed to explain why his interpretation of Dr. Carpenter's recommendation, rather than Dr. Hill's, was correct. *See Reddick*, 157 F.3d at 725.

The Court concludes the ALJ erred by discounting Dr. Hill's 2012 opinions without a specific and legitimate reason.

### b. 2014 Opinions

In discounting Dr. Hill's 2014 opinions, the ALJ cited "stable alignment of the lumbar spine" with hardware still in place, stable gait and intact strength, and Plaintiff's statements that pain medication improved her physical functioning. AR 25 (citing AR 899, 1052, 1271).

However, spinal alignment and intact hardware do not contradict Dr. Hill's functional assessment. The clinical evidence concerning gait and strength also does not undermine Dr. Hill's opinions. The July 2014 treatment note the ALJ cited states that Plaintiff had a "narrow based" gait, not a normal gait, and strength was normal except for "mild weakness" in the left hip "secondary to pain." AR 1271. In August 2013, Brian Iuliano, M.D., who performed Plaintiff's third back surgery in October 2013, described an "antalgic gait" and stooping forward. AR 692. Dr. Iuliano also observed motor weakness in four of nine sites tested. AR 692. An extremely detailed examination of Plaintiff's back in April 2013 showed muscle strength was "globally weakened" in left and right lumbar regions. AR 586. Even after the October 2013 surgery, Plaintiff had a "narrow based" gait. AR 689. These abnormalities support, rather than undermine, Dr. Hill's opinions.

The mere fact of improvement also does not contradict Dr. Hill's opinions. *See Garrison*, 759 F.3d at 1017 n. 23. Even with "improvements in physical functioning" due to pain medication, Plaintiff reported an overall level of functioning of only four or five out of ten. AR 704, 899, 1052; AR 711 (2/10 without pain meds, 4/10 with). The ALJ failed to explain how such a low level of functioning contradicts Dr. Hill's opinions or shows that Plaintiff can work. Although a reviewing court "will not fault the agency merely for explaining its decision with

'less than ideal clarity,' … we still demand that the agency set forth the reasoning behind its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Here, the Court cannot discern how the ALJ concluded that functioning at a level of five out of ten contradicted Dr. Hill's opinions or showed that Plaintiff can work full time.

The Court concludes the ALJ erred by discounting Dr. Hill's 2014 opinions.

### 2. Dr. Gaffield

After examining Plaintiff in 2017, Gary Gaffield, D.O., opined that she could sit, stand, and walk eight hours a day, lift 50 pounds occasionally and 25 pounds frequently, and perform postural activities occasionally. AR 1284. The ALJ gave Dr. Gaffield's opinions "partial weight" and imposed stricter exertional limitations in the RFC. AR 25, 19.

Plaintiff contends the ALJ erred by giving Dr. Gaffield's opinions greater weight than Dr. Hill's. Dkt. 9 at 8-9. An ALJ is not required to provide reasons in support of accepting a medical opinion. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) ("the ALJ did not need to provide 'clear and convincing reasons' for rejecting [a treating doctor's] report because the ALJ did not reject any of [his] conclusions"). However, because the ALJ must reevaluate Dr. Hill's opinions on remand, the ALJ should also consider whether they should outweigh Dr. Gaffield's.

### 3. Dale Thuline, M.D.

The ALJ gave "significant weight" to the opinions of nonexamining state agency physician Dale Thuline, M.D., that Plaintiff could sit, stand, and walk for six hours a day each, and lift 20 pounds occasionally and 10 pounds frequently. AR 25. As with Dr. Gaffield,

because the ALJ must reevaluate Dr. Hill's opinions on remand, the ALJ should also consider whether they should outweigh Dr. Thuline's.

C. **Scope of Remand**

Plaintiff requests the Court remand for an award of benefits. Dkt. 9 at 12-13. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. The Court has flexibility, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, the Court concludes that the record as it stands does not mandate a finding of disability. Although the ALJ erred by discounting Dr. Hill's opinions, Dr. Hill's opinions remain in conflict with Dr. Gaffield's and Dr. Thuline's opinions. It is the ALJ who must resolve conflicts in medical testimony. *Andrews*, 53 F.3d at 1039.

Plaintiff argues that the record needs no further development based on her assertion, without support from the record, that her "condition has been stable since her third surgery" and her "providers are no longer providing curative treatment." Dkt. 9 at 13. The Court is not in a position to make such findings. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("we cannot rely on independent findings of the district court. We are constrained to review the

reasons the ALJ asserts."). Moreover, Plaintiff's current condition does not settle the issue of her condition since her alleged July 2011 onset date.

The Court concludes that enhancement of the record would be useful. Accordingly, the Court remands the case for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Plaintiff's testimony and the opinions of Dr. Hill, Dr. Gaffield, and Dr. Thuline, reassessing the RFC as necessary and proceeding to step five as needed.

DATED this 21st day of May, 2019.

Thomas S. Zilly
United States District Judge

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14